Cavaness v. The State.

## CAVANESS v. THE STATE.

1. CRIMINAL EVIDENCE : *Homicide. Corpus delicti.*
   For evidence held sufficient of the *corpus delicti* in this case, see the opinion.

2. SAME : *Sanity of prisoner: Burden of proof.*
   Evidence on the trial of a homicide sufficient to raise a doubt of the prisoner's sanity does not put upon the State the burden to prove his sanity beyond a reasonable doubt.

APPEAL from *Monroe* Circuit Court.

Hon. M. T. SAUNDERS, Circuit Judge.

*The appellant pro se.*

It was error to refuse instructions No's. 6, 8, and 10, asked for defendant in regard to the effect of drunkeness upon the mind.

The State totally failed to prove the *corpus delicti*, and this is fatal. No witness swore that the party alleged to have been killed was dead, or killed, or that he had seen the dead body, or that even he had disappeared. 2 *Greenl. on Ev.* Sec. 278 ; 4 *Id., Sec's.* 131, 132; *Bishop on Cr. Pro.*, Sec. 5010 *note.* The presumption is that he is still alive, until proof is furnished that he is dead.

*C. B. Moore.* Att'y Gen'l, *contra.*

The charge of the court was one of the fullest and fairest we have seen, and embodies the law as expounded by text writers and our own decisions, and the evidence fully justified the verdict. The 6th instruction refused was covered by the general charge of the court. The 8th *is not law. Sec.* 1252 *Gantt's Dig.*; 26 *Ark.*, 334 ; 40 *Ark.*, 511 *and cases cited.*

The 10th is a reiteration of the 6th.

There is not one particle of evidence to extenuate or excuse the crime. Defendant was not "in such a besotted condition as not to know what he was doing or that it was wrong." 40 *Ark.*, 521. Plenty of time had elapsed for his blood to cool. He deliberately prepared himself and sought his victim, renewed the quarrel, or rather brought on a fresh one, cursed and struck deceased and then killed him. *This is murder in the first degree.*

Cavaness v. The State.

SMITH, J. Cavaness was indicted by the grand jury of Monroe County for the murder of William Barlow; was regularly tried upon the plea of "not guilty;" was convicted of murder in the first degree and was condemned to be hanged.

The motion for a new trial set up that the verdict was against law and evidence, that the court had misdirected the jury and had refused the prayers of the defendant for instructions numbered 6, 8, 10 and 11.

The following is a fair summmary of the testimony:

The defendant, when sober, is a peaceable, well-disposed citizen; but when in liquor is quarrelsome and dangerous. The deceased, who was a bar-tender by occupation, bore the reputation of a desperate man. The defendant had been drinking heavily for several days, and on the morning of Sunday, August 5th, 1883, was drunk in the saloon kept by deceased in the town of Indian Bay. An altercation occurred between the two about 9 or 10 A. M., but did not proceed to actual blows, owing to the interference of by-standers. The defendant then left the house and the witnesses neither saw, nor heard of him any more until 3 P. M. of the same day, when he came back to the saloon. He boasted that he was the best man in the county and could whip any man in the town. He went into the room where Barlow was lying on a cott, swore at him and told him to get up, that they must settle their difficulty now, that he was fixed for him and that he was going to whip him. Barlow told him to go away, that he desired no difficulty and remarked to the defendant "you have a pistol." Upon this the defendant struck Barlow with his left hand, at the same time drawing his pistol with his right. Barlow jumped up and called on the by-standers for help, and the parties grappled with each other. Both were armed and each at-

1. The facts.

Cavaness v. The State.

tempted to shoot the other; but Barlow's pistol missed fire, while the defendant succeeded in shooting his antagonist.

This was murder in the first degree, provided Barlow died from the effects of the wound within a year and a day. Five or six hours had elapsed between the quarrel in the morning and the shooting. There had been ample time for passion to subside and for the blood to cool. In this interval, the defendant had prepared a deadly weapon, and then sought his victim, picked a fresh quarrel with him, thrust the combat upon an unwilling man by cursing and striking him, and finally shot him. All the ingredients of willfulness, malice, deliberation and premeditation are present here.

*Corpus delicti.*

But it is insisted that there is no sufficient proof that Barlow is dead. In cases of homicide, the *corpus delicti,* by which is meant the fact that the crime has been actually perpetrated, involves two distinct propositions; namely, that the person is dead and that he died in consequence of the injury received at the hands of the accused. " The most positive and satisfactory evidence of the fact of death is the testimony of those who were present when it happened, or who, having been personally acquainted with the deceased in his lifetime, have seen and recognized his body after life was extinct." 3 *Gr. Ev. Sec's.* 131–2; *Starkie on Ev.* 9th *Am. Ed.,* [ * 862 ].

All of the witnesses speak of Barlow as deceased; and one of defendant's own witnesses mentions the killing of Barlow. We concede that these expressions standing alone, would not warrant the jury in inferring his death and that it was produced by the criminal agency of the prisoner. But this is not all. It is proved that a physician was immediately summoned, who gave it as his opinion that Barlow could not long survive. The same phy-

Cavaness v. The State.

sician also testified on the trial of this case that he was acquainted with the deceased (meaning Barlow) and that on the 6th of August, 1883, he examined the body and found that the ball had passed through the right lobe of the liver, and through the right kidney, and had lodged against the skin about one inch to the right of the back bone; and that the wound was sufficient to cause death in any case. We conclude that the Doctor, when he speaks of " the body," intended as no doubt the jury and the court below understood, the dead body—the cadaver or corpse—of Barlow, and that his examination was *post mortem*. If the patient had been alive when he probed the wounds, he would have spoken of Barlow as a person—not of the body of Barlow.

The court gave an elaborate charge to the jury, and in addition ten special directions at the defendant's request. The general charge was not excepted to. The prayers that were denied were as follows:

6. " If the jury believe from the evidence that, at the time the fatal shot is alleged to have been fired, the defendant was so far affected in his mind and memory that he was not able to distinguish right and wrong, and had not knowledge and understanding of the character and consequences of his act, and power of will to abstain from it, then he was not a legally responsible being, and the jury should find him not guilty."

8. " While it is true that the law presumes every man to be sane and responsible for his acts, until the contrary appears, still if there is evidence tending to rebut this presumption sufficient to raise a reasonable doubt upon the issue of sanity, then the burden of proof is upon the State to show beyond a reasonable doubt, that the defendant was sane at the time the alleged offense was committed."

2. Sanity of defendant: Burden of proof.

10. ." If the jury believe from the evidence, beyond a reasonable doubt, that the defendant committed the act in manner and form as charged in the indictment, still if they further believe from the evidence that the defendant was in such a state of mental insanity as not to be conscious of what he was doing, or that the act itself was wrong, then they should find the accused not guilty."

11. " Although drunkeness in itself is no excuse or palliation for crime committed while under its influence, yet mental unsoundness superinduced by excessive drunkenness may be an excuse, if such mental derangement be sufficient to deprive the accused of the ability to distinguish between right and wrong."

All of these rejected requests are predicated upon the existence of a state of facts of which there is no proof in the billl of exceptions. There is no evidence that the defendant labored under any mental unsoundness or infirmity, nor even that he was drunk when he shot Barlow. He had been drunk in the morning; but no witness stated that he was under the influence of liquor when he returned to the saloon in the afternoon. There is no reason to think that his indulgence in strong drink had proceeded so far as to impair his mind or memory or produce any derangement of his faculties. On the contrary, it is apparent that he knew perfectly what he was about.

The 8th prayer, above copied, is not the law of this State under any circumstances. *Gantt's Dij. Sec.* 1252; *MeKenzie v. State,* 26 *Ark.,* 334; *Casat v. State,* 40 *Id.,* 511.

Finding no error the judgment must be affirmed.