Teresa WILLIAMS *v.* O'NEAL FORD, INC.

83-230                                           668 S.W.2d 545

Supreme Court of Arkansas
Opinion delivered May 7, 1984
[Rehearing denied June 11, 1984.]

*Seay & Bristow,* by: *Bill W. Bristow,* for appellant.

*Penix, Penix, Mixon & Lusby,* for appellee.

P. A. HOLLINGSWORTH, Justice. On March 14, 1979, Teresa Williams signed a sale agreement with O'Neal Ford, agreeing to trade her 1973 Dodge Charger toward the purchase of a newer automobile. The sale was contingent upon Mrs. Williams securing the necessary financing for the transaction. By agreement, her car remained in O'Neal Ford's custody while she sought financing. Some three weeks later, after being unable to obtain the financing, she returned to O'Neal Ford to pick up her car. However, the car had been sold to a used car wholesaler by O'Neal Ford. Mrs. Williams demanded $1,200, the trade-in allowance listed on the March 14 agreement. O'Neal Ford refused to pay the demanded amount. Several days after Mrs. Williams' demand of $1,200, O'Neal Ford repurchased the car and offered to return it to Mrs. Williams. She refused the return of the car stating that she was due the $1,200. O'Neal Ford informed Mrs. Williams that she would be charged a storage fee for each day the car remained on the premises. The fee would eventually consume the value of the car.

Mrs. Williams brought suit against O'Neal Ford, alleging conversion of the 1973 Dodge Charger and praying for $1,200 in compensatory damages and $25,000 in punitive damages. A jury awarded her $1,200 in compensatory damages and $22,500 in punitive damages. A motion for judgment notwithstanding the verdict was granted by the trial court as to the punitive damages and the compensatory damages were allowed to stand. The appeal is before us pursuant to Rule 29 (1) (o) involving an issue in the law of torts.

Appellant, Teresa Williams, contends that the trial court erred in setting aside the jury award of punitive damages. Our examination of the record reveals there is substantial evidence to support an award of punitive damages. We reverse.

We have held a judgment notwithstanding the verdict is proper where there is no substantial evidence to support the jury verdict, and one party is entitled to a judgment as a matter of law. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or another. It must force or induce the mind to pass beyond a suspicion or conjecture. *Findley, Administratrix* v. *Time Insurance Co.*, 269 Ark. 257, 599 S.W.2d 736 (1980). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the judgment n.o.v. is rendered, here, appellant Teresa Williams.

In *Ford Motor Credit Co.* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979), we stated that "although the taking was proper, the retention of the personalty after demand for its return constituted a submissible fact question on the issue of punitive damages." Here, the requisite malice could be inferred from acts that are analagous. We will discuss the acts present in this case.

Teresa Williams' testimony is clear that no one from O'Neal Ford mentioned the possibility of getting her car back until she retained an attorney, and he put O'Neal Ford on notice of the potential legal action. The following testimony by Clyde Booth, general manager of O'Neal Ford, was presented to the jury:

> Q.: All right. Now I want to ask you, after being put on notice that your company was going to be sued for punitive damages to punish you did you all do anything at any time up to this point to give her that $1,200?
>
> A.: The only thing that I know we — the only thing that I can recollect is that we offered her her car back. I don't think at any time we offered her $1,200.
>
> Q.: And sitting here right today you are not willing to give her $1,200 are you?

A.: No.

Q.: Or any portion of it?

A.: Yes, I'll give her — now, at this point I would give her — I would return her car, the same thing that we offered.

The jury was aware of the circumstances of all the parties. They knew that Teresa Williams was a young black woman whose husband was away in the service of his country at the time of this occurrence; that she had three small children to transport to school and other places; and that she had essentially no experience in the marketplace. In voir dire this jury was asked if they felt merchants in the area should treat a black person in the same fashion as the merchant treats a white person. The response was affirmative in voir dire and is reflected by their award of punitive damages. The jury, acting as the conscience of the community, saw fit to punish the conduct of O'Neal Ford. Taking into account the jury's superior vantage point on these matters including the credibility of the witness and viewing the evidence in the light most favorable to appellant, we hold there was substantial evidence to support the jury verdict. See *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Reversed.

GEORGE ROSE SMITH, HICKMAN, and DUDLEY, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The single issue is whether the trial judge correctly set aside the award of punitive damages.

The appellant, Teresa Williams, wanted to purchase a new Ford LTD automobile. She testified that, on March 14, 1979, her father towed her 1973 Dodge Charger to O'Neal Ford, Inc., appellee, a Ford dealer in Jonesboro. She chose the car which she wished to purchase and said she wanted to trade her car toward the purchase price. The parties agreed

upon a "trade-in allowance" of $1,200 for appellant's automobile and appellant signed an agreement to that effect. The trade was contingent upon appellant securing a loan to pay the balance of the purchase price. Appellant did not deliver the certificate of title on the 1973 Dodge to appellee. Appellant testified that appellee's salesman told her that, since her 1973 Dodge was in such bad condition, she could leave it at appellee's place of business and they would look after it for her while she was obtaining a loan. She left her car with appellee under those conditions.

A legal analysis of the facts to this stage of events shows that a trade of automobiles had occurred, conditional upon appellant's obtaining a loan for the balance, and a bailment was in effect. There was a delivery of the car by the bailor, appellant. The bailment was upon an implied contract that the bailee, appellee, would safely keep the car and then, if the bailor obtained a loan for the balance of the purchase price, take title to the car and allow a $1,200 trade-in allowance in accordance with the sales agreement. On the other hand, if the bailor could not obtain a loan, the bailee would redeliver the car to the bailor. There is no evidence whatsoever that there was an unconditional sale of appellant's car to appellee for a cash price of $1,200.

After appellant's car had remained in front of appellee's place of business for a few days, it was moved to a lot behind the building where other used cars were located. Subsequently, one of appellee's salesmen mistakenly conditionally sold appellee's car, along with several others, to a wholesale used car dealer. The $350 sale was conditioned upon delivery of the certificate of title. Appellee never delivered title.

An analysis to this stage reveals that there was substantial evidence that a conversion had occurred. A conversion by a bailee is committed by an action in derogation of a bailor's possessory right. When appellee conditionally sold appellant's car and delivered it to a used car wholesaler the implied contract of bailment was breached.

Meanwhile, appellant was going to various financial

institutions trying to borrow the balance necessary to complete the trade. On April 8, 1979, upon a final rejection by a lender, appellant returned to appellee's place of business to get her Dodge. Appellee's salesman could not find her car and then found that it mistakenly had been sold. He so informed appellant. Appellant immediately demanded $1,200 for her car. Appellee refused to pay this amount.

The next day appellant sought legal counsel who placed appellee on notice that, unless $1,200 was paid, a suit for punitive damages would be filed. The basis of appellant's $1,200 demand is ambiguous but it is noteworthy that appellant does not argue that there had been an unconditional sale of the Dodge for $1,200. Appellee took prompt steps to recover the car. A few days later appellee notified appellant that her car had been recovered and was available for her.

The conversion ended at this point. The action in derogation of the bailor's possessory right had ceased. The bailee sought to redeliver the car to the bailor, but she refused to accept it. The jury awarded $1,200 compensatory damages for the breach to this point and these compensatory damages are not at issue.

A bailee may be liable for punitive damages if he converts goods in an intentional violation of the possessory rights of the bailor. See Ford Motor Credit Co. v. Herring, 267 Ark. 201, 589 S.W.2d 584 (1979). But here there was no intentional act. To this point, when the conversion ended, there had been no intentional act, no fraud, no malice, nor had there been oppression.

The situation remained a standoff, with appellant refusing to accept the car and appellee refusing to pay $1,200 cash. Appellant then filed suit and the jury awarded $22,500 in punitive damages. The majority upholds the punitive award because appellee would not pay appellant $1,200 cash for her car. The majority position is untenable.

If there had been an unconditional sale of appellant's

car to appellee for $1,200, the appellee would have been entitled to possession at all times and there could have been no conversion and hence no damages, compensatory or punitive, for conversion. Thus, even the majority must agree there was not an unconditional sale. They must agree there was a bailment and a conversion. When the bailee attempted to redeliver the car according to the implied terms of the bailment, the appellant-bailor refused to accept it. She demanded $1,200 cash, with no trade, as though there had been an unconditional sale for $1,200. She and her attorney threatened a suit for punitive damages if appellee did not pay the $1,200.

The majority opinion states that liability for punitive damages accrued during this latter dispute. Yet, the conversion had ended and therefore the punitive damages cannot be for the conversion. The majority can only be punishing the appellee for refusing to pay the $1,200 without a trade of cars as agreed, yet appellee had no contractual obligation, expressed or implied, to pay this amount. The appellee had not unconditionally purchased the car for $1,200. There was only a conditional trade. The appellant still held the certificate of title. A valid dispute existed between the parties over the manner of terminating the bailment. Appellee's contention that it did not owe $1,200 cash had a valid basis but the majority punishes appellee for refusing to modify the contract and purchase appellant's car. The majority has created a very dangerous precedent in allowing punishment damages for refusing to modify a contract. I dissent.

GEORGE ROSE SMITH and HICKMAN, JJ., join in this dissent.