William WOOD, Jr. *v.* STATE of Arkansas

CA CR 86-151 724 S.W.2d 183

Court of Appeals of Arkansas
Division I
Opinion delivered February 18, 1987
[Rehearing denied March 18, 1987.]

62

*Paul Petty* and *Robert Meurer*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight,* Asst. Att'y Gen., for appellees.

GEORGE K. CRACRAFT, Judge. William Wood, Jr., appeals from his conviction of the crime of manslaughter for which he was sentenced to five years in the Department of Correction. The appellant advances six points for reversal in which we find no merit.

On December 21, 1984, the appellant's vehicle collided with the rear of a truck driven by William Hunter with such force as to cause the truck to roll over a number of times on the highway and down an embankment into a tree. Hunter was killed in that accident. There was undisputed evidence from which the jury could find that the appellant was driving erratically, at an excessive rate of speed, and under the influence of alcohol at the time of the accident. The appellant does not contend that the verdict is not supported by substantial evidence, but argues that the trial court's rulings on several evidentiary and procedural matters constituted prejudicial error.

The appellant first contends that the trial court erred in not dismissing the information because the State did not sufficiently prove the fact of Hunter's death in the accident. The appellant's argument is hinged on the fact that there was no autopsy or physician's opinion on the fact of death. Neither autopsy nor medical evidence is necessarily required to establish the fact of death; it can be shown by strong and unequivocal evidence which leaves no ground for reasonable doubt. Where there is such evidence of death, its weight and sufficiency is for a jury to determine. *Sims* v. *State*, 258 Ark. 940, 530 S.W.2d 182 (1975). It has been said that the most satisfactory evidence of death is the testimony of those present when it happens or who, being acquainted with the deceased, have seen the body after life is extinct. *Sims* v. *State, supra; Cavaness* v. *State*, 43 Ark. 331 (1884).

No statute or decision has impaired the accuracy of these holdings. We find no merit in appellant's argument that these decisions have been nullified by the subsequent enactment

of Ark. Stat. Ann. §§ 83-357—358 (Supp. 1985). These statutes define when one is legally dead and require that "[a] determination of death shall be made in accordance with accepted medical standards." These sections in no way change our case law. They are portions of acts dealing with vital statistics enacted to update earlier statutes concerning proper record keeping. They do not require that proof of death for the purposes of criminal prosecution be made only by autopsy evidence or by specific medical opinion.

Appellant next contends that the trial court erred in not giving a jury instruction on proof of death based upon those sections. We have already determined that such an instruction would not correctly state the law. Furthermore, the appellant did not prepare and proffer such an instruction as he wished the court to give. It is well established that one requesting a jury instruction must prepare and submit to the court a correct instruction and, where he fails to do so, he is in no position to argue on appeal that the request should have been granted. *Coleman* v. *State*, 12 Ark. App. 214, 671 S.W.2d 221 (1984).

Immediately after the accident, Officer Larry Mitchell noted that appellant's speech was slurred, he was unsteady on his feet, and smelled of alcohol, and had him transported to the detention office in Searcy, Arkansas, for a breathalyzer test. Appellant's vehicle was badly damaged and had become immobilized on the median of the divided highway. The police officer, determining that it was in an unauthorized place and created a danger, ordered a wrecker to remove the vehicle. Before the vehicle was removed, he inventoried the contents pursuant to Arkansas State Police policy and, among other things, found empty beer bottles and the butts and ashes of what appeared and were later determined to be marijuana cigarettes. The appellant argues that this inventory was a mere pretext for an investigative search and that the marijuana should therefore have been suppressed.

Rule 12.6(b) of the Arkansas Rules of Criminal Procedure provides that a vehicle retained in official custody for good cause may be searched at such time and to such an extent as is reasonably necessary for safekeeping of the vehicle and its contents. The officer testified that he was not conducting a

"search" and had no suspicion that the vehicle contained contraband or controlled substances. He was simply performing a caretaking function required by his agency to protect the owner of the vehicle to be impounded. The appellant's vehicle was in a median area, had been severely damaged in a serious accident, and was subject to being towed. The officer stated that he inventoried the contents thereof in a routine procedure required by the state police. The intent of a police officer is a question of fact and where, as here, there is nothing to contradict the officer's testimony as to the purpose of his actions, deference must be given to the trial court's finding. *Colyer* v. *State*, 9 Ark. App. 1, 652 S.W.2d 645 (1983). We agree with the State that, as the marijuana was lying in plain view and its nature was apparent to the officer, seizure of it would be justified under the so-called "plain view doctrine" as set forth in *Heard* v. *State*, 272 Ark. 140, 612 S.W.2d 312 (1981).

 The appellant further argues that, even so, the evidence of the marijuana should not have been admitted because it was irrelevant and its probative value was substantially outweighed by the danger of unfair prejudice. We do not agree. Ark. Stat. Ann. § 41-1504(1)(c) (Repl. 1977) provides that a person commits manslaughter if he recklessly causes the death of another person. The testimony of the drivers of the two vehicles following the appellant immediately before the accident indicated that the appellant was speeding and driving erratically. All who observed him at the scene of the crime indicated that he was unsteady on his feet, that his speech was slurred, and that he smelled of alcohol. There were empty beer cans in his vehicle and a breathalyzer test established that he was intoxicated. Furthermore, appellant admitted that he had smoked marijuana earlier that day. Rule 401 of the Arkansas Rules of Evidence defines relevant evidence as any evidence having the tendency to make the existence of any fact more or less probable than it would be without that evidence. The presence of the marijuana in his vehicle was clearly independently relevant to the issue of whether the appellant was acting recklessly.

 Under A.R.E. Rule 403, relevant evidence should not be excluded unless its probative value is substantially outweighed by the danger of unfair prejudice. The balancing of probative value against prejudice is a matter left to the sound

discretion of the trial judge and his decision on such a matter will not be reversed absent a manifest abuse of that discretion. *Washington* v. *State*, 6 Ark. App. 85, 638 S.W.2d 690 (1982). We cannot conclude in this case that the trial court abused its discretion in admitting the marijuana into evidence. The appellant does not argue in what way the evidence of the marijuana was unfairly prejudicial. However, in view of his confession to having smoked a marijuana cigarette earlier that day (to be discussed *infra*), there could have been little, if any, prejudice, and surely not the *unfair* prejudice of which the rule speaks. *See Harmon* v. *State*, 286 Ark. 184, 690 S.W.2d 125 (1985). As the evidence of the marijuana should have been received only for its relevance on the appellant's mental state, a request for a limiting instruction should have been granted. However, no such request was made and failure for the court to so instruct in the absence of such a request is not error. *Williams* v. *State*, 276 Ark. 399, 635 S.W.2d 265 (1982).

Officer Mitchell testified that when he arrived at the scene he observed that the appellant was unsteady on his feet, had slurred speech, and appeared to be intoxicated. He read him his *Miranda* rights and stated that the appellant admitted that the vehicle in the median was his but did not say anything else and simply shook his head. The officer stated that, although the appellant did not request an attorney, he did not attempt to question him further. The appellant was then transported to a police station for a breathalyzer test. Three or four hours later, Sergeant J. R. Howard of the Arkansas State Police again advised the appellant of his rights, including his right to have an attorney present. The officer was not aware at that time that the appellant's rights had previously been read to him at the scene of the accident. Howard stated that the appellant acknowledged that he understood his rights, signed a form stating that he was willing to answer questions without the presence of an attorney, and immediately gave a statement in which he admitted that he had "three stiff drinks" not too long before he left work and purchased a six-pack of beer en route home. He admitted that he had become drowsy and meant to pull over to the side of the road but had not. He stated that after the accident he tried to help revive the deceased but that "I knew he was dead." The appellant admitted that he had enough marijuana with him that day for one cigarette and

had smoked it at noon that day. The officer stated that at no time did the appellant mention to him that he either wanted an attorney or had requested one at any prior time. He stated that appellant was fully cooperative and that he gave his statement freely and voluntarily.

Appellant argues that his refusal to make a statement at the scene was a clear indication to the officers that he had not waived his right to remain silent and that, once he invoked his fifth amendment privilege, the police officers had no right to question him further. The renewed questioning after a suspect has invoked his right to remain silent which constitutes a violation of the *Miranda* principle has been dealt with by the United States Supreme Court in *Michigan* v. *Mosley*, 423 U.S. 96 (1975), and the Arkansas Supreme Court in *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 812 (1986). In those cases, it was concluded that the admissibility of statements returned after a person in custody has once decided to remain silent depends upon whether his right to "cut off questioning" has been "scrupulously honored." To scrupulously honor the appellant's right to cut off questioning simply means that, once he has invoked his right to remain silent, his will to exercise that right should remain undisturbed. There must be no attempt to undermine his will, wear down his resistance, or force him to change his mind, and he must understand at all times that he is under no compulsion to respond to any interrogation. A determination of these questions will, of course, depend upon the facts of each case relative to the conduct of both the police officers and the appellant. *Hatley* v. *State, supra.*

The facts in this case are uniquely similar to those in *Hatley*. Here, Officer Howard testified that, between three and four hours after the fatal accident, he contacted the appellant and informed him of his *Miranda* rights. The appellant immediately indicated that he understood the explanation. The officer testified that he had made no effort to coerce the appellant and that, immediately after being informed of his rights, the appellant signed a form acknowledging that he understood his rights and that he freely and voluntarily gave the statement of his activities prior to the fatal accident. There was no evidence to the contrary. We cannot conclude that the appellant's right, consistent with *Michigan* v. *Mosley* standards, to cease the interrogation was

violated. There is nothing here to suggest that there were efforts to wear down his resistance or prevail upon him to change his mind with regard to the assertion of his rights. After he had been brought to the detention center, no attempt to question him was made for three to four hours, at which time he was asked if he wished to make a statement and he stated that he did. The period of time between his detention and second questioning was of sufficient length to produce more than a momentary lull before being approached the second time, and did not constitute "repeated questioning." On the other hand, it was not so long as to produce an inference that his cooperation was the result of lengthy detention. We find no error.

Appellant finally argues that the trial court erred in not granting a mistrial following the testimony of Carl Max Johnson, an eyewitness to the incident. He testified extensively and adversely to the appellant about the events that he had observed. Shortly after the accident, Johnson was interviewed by State Trooper Leroy Davis, in which he gave a statement of what he had observed. There was a question as to whether the notes taken by the officer during that statement were signed by Johnson or not. In any event, the officer testified that those notes were simply taken for subsequent transcription and were incorporated into a written report which was furnished to the appellant prior to cross-examination as provided in Ark. Stat. Ann. § 43-2011.3 (Repl. 1977). Appellant argues that the original notes had not been furnished to him and that this was prejudicial and denied him the right of cross-examination.

In this case, both Trooper Davis and Johnson testified and the appellant was free to cross-examine them both fully. Johnson's statement at the trial differed from that given at the scene only as to the point at which one event, which occurred after the accident, fit into the full sequence of events he had observed. The police officer testified that the notes taken of his interview with Johnson were not intended to be a statement but were for the purpose of incorporation into his report. He testified that handwritten notes taken at the scene were not maintained and were no longer in existence. The officer testified that he did not write down everything that was told him and that he used both his notes and memory in typing his report. He stated that he types all of his reports and then disposes of his handwritten notes because his

handwriting is so poor. Under the circumstances of this case we cannot say that the failure to maintain the handwritten notes was of such prejudicial magnitude as to warrant so drastic a remedy, especially when it was shown that no prejudice resulted.

Affirmed.

JENNINGS and MAYFIELD, JJ., agree.