WALT BENNETT FORD, INC. *v.* Richard Randall
KECK

88-148 768 S.W.2d 28

Supreme Court of Arkansas
Opinion delivered April 17, 1989

*Wallace, Dover & Dixon*, by: *Suzanne Antley* and *David A. Couch*, for appellant.

*Steven R. Davis*, for appellee.

VINCENT FOSTER, JR., Special Justice. Appellant, Walt Bennett Ford, Inc., having completed warranty repairs on a Yugo automobile owned by appellee, Richard Keck, declined to surrender the Yugo to Keck due to his refusal to pay rental charges for a substitute automobile appellant provided him to use while his Yugo was being repaired. Keck sued for conversion of the Yugo, and the jury returned a verdict against appellant for both compensatory and punitive damages, from which appellant appeals. Appellant contends that the trial judge erred in allowing the introduction of certain evidence and in submitting the issue of punitive damages to the jury and argues alternatively the punitive award was excessive. We affirm.

In October 1986, Keck purchased the Yugo automobile from appellant, an automobile dealer. Mechanical and other defects immediately developed, and Keck took it back to the appellant for repair on at least two occasions. Both times the appellant provided Keck an automobile to use while the Yugo was being repaired. On the first occasion it is undisputed there was no charge for the substitute automobile. On the second occasion Keck testified he told a representative of the dealer that he would be out of state for six to eight weeks and he needed a "loaner" automobile to use while the Yugo was being repaired. He testified that he was told there would be no charge for the "loaner" automobile. Appellant disputed this testimony. On both occasions Keck signed a lease agreement form but he testified the form was blank when he signed it and that he was told the form was necessary only to waive liability insurance on the substitute automobile. When Keck returned to pick up his Yugo seven

weeks later, in late December, the dealer's agents demanded $1,200 in rent for use of the substitute automobile. Upon Keck's refusal to pay, the demand was reduced to $360 rental, calculated to cover the time which the dealer contended the Yugo had been repaired and available to be picked up. Keck testified he had not received prior notice the automobile was ready and he refused to pay the reduced demand. Because of Keck's refusal to pay rental, the appellant declined to surrender the Yugo and its service manager told Keck that appellant would keep the automobile until Keck paid the rental claimed. Keck left the dealership on foot.

It is undisputed that all repairs to the Yugo were warranty repairs, that Keck owed the dealer nothing for the repairs, and that the lease agreement form for the substitute automobile did not grant the dealer a possessory lien on the automobile being repaired.

In response to Keck's claim for conversion of his Yugo, appellant filed a general denial and counterclaimed for rental on the substitute automobile. The jury held for Keck on the counterclaim and awarded him $6,337.33 in compensatory damages and $25,000 in punitive damages on the conversion claim.

■■ Appellant contends evidence introduced regarding the defects of the Yugo and attempts at repairs was irrelevant to the elements of conversion and inflamed the jury. Rule 401 of the Arkansas Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Appellant's counterclaim for rental directly placed in issue whether or not Keck had agreed to pay rental on the substitute automobile. Keck testified that when he delivered the Yugo for repair on the second occasion he was initially told that the dealer could not give him a "loaner" vehicle but that a rental unit was available. Keck testified that because of all the problems he had had with the Yugo he was adamant with the dealer that he was not going to pay for a rental car and that the dealer's representative agreed. The testimony concerning the mechanical problems and repair attempts tended to make Keck's version of the discussions regarding the substitute automobile, including the

dealers' acquiescence in Keck's unwillingness to agree to pay rental, more probable than if the jury had considered the issue without knowing the history of prior problems experienced by Keck.

 Appellant contends the evidence should have been excluded under Rule 403 of the Arkansas Rules of Evidence even if it were relevant. Rule 403 permits the trial court to exclude relevant evidence if its probative value is *substantially* outweighed by the danger of unfair prejudice or other specified considerations. The balancing of the probative value against prejudice from evidence is within the discretion of the trial judge, and his decision on such a matter will not be reversed absent an abuse of that discretion. *Simpson* v. *Hart*, 294 Ark. 41, 740 S.W.2d 618 (1987); *Wood* v. *State*, 20 Ark. App. 61, 724 S.W.2d 183 (1987). The admission of the challenged evidence did not constitute an abuse of discretion, and some of the testimony complained of was invited during cross-examination by appellant's counsel.

Appellant next contends that the trial court erred in submitting the issue of punitive damages to the jury and that the jury's award of punitive damages was unsupported by the evidence. Appellant does not argue the sufficiency of the evidence to establish liability for willful conversion.

█ In *Ford Motor Credit Co.* v. *Herring*, 267 Ark. 201, 589 S.W.2d 584 (1979), the appellant lender had financed the sale of two pickup trucks and had peacefully repossessed the trucks upon the buyer's default on monthly payments. But despite demand the lender had not promptly returned personal property which was stored in the trucks at the time of the repossession. Upon the debtor's suit for conversion of the personalty, the jury awarded $2,000 in actual damages and $17,000 in punitive damages. The appellant asserted that the trial court erred in instructing the jury regarding punitive damages since there was no evidence of force, oppression, or intimidation in connection with the repossession. This Court held:

> Exemplary damages are proper where there is an intentional violation of another's right to his property. *Kelly* v. *McDonald*, 39 Ark. 387 (1882); *Ft. Smith I. & S. Mills* v. *So. R. B. P. Co.*, 139 Ark. 101, 213 S.W. 21 (1919); and

*Parks* v. *Thomas, supra.* In view of the evidence previously recited, we hold that, although the taking was proper, the retention of the personalty after demand for its return constituted a submissible fact question on the issue of punitive damages.

*Herring* at 206-07, 589 S.W.2d at 588. This Court also affirmed the sufficiency of evidence to uphold a punitive damages award for conversion of appellee's automobile in *Williams* v. *O'Neal Ford, Inc.,* 282 Ark. 362, 668 S.W.2d 545 (1984).

In *Shepherd* v. *Looper*, 293 Ark. 29, 732 S.W.2d 150 (1987), the appellant admitted having possession of appellee's commercial fishing nets but claimed he was keeping them to ensure the recovery of nets of his own, pursuant to an alleged agreement with appellee. The jury rejected the explanation, and this Court held the evidence was sufficient to support the award of punitive damages.

The trial court instructed the jury on Keck's claim for punitive damages that he "has the burden of proving that Walt Bennett Ford intentionally pursued a course of conduct for the purpose of causing damage." This instruction presented one of the two alternative descriptions of conduct in AMI Civil 2d 2217 (Revised) which can justify an award of punitive damages. Appellant's objection was not to the form of the instruction but rather to the sufficiency of evidence to support the submission of the issue of punitive damages to the jury.

■ Appellant's conduct of retaining the Yugo even through the trial, thirteen months after the demand for surrender, without any claim of mistake or privilege or other legal right to do so, presents a submissible issue on punitive damages. The jury reasonably could have concluded that appellant withheld Keck's property, his means of transportation, with the intent of causing him such inconvenience and damage that he would be coerced into the payment of a questionable debt. Appellant continued this course of conduct even after it was sued for conversion, obtained legal counsel and filed a counterclaim for the disputed rental. The evidence is sufficient to support a finding of intent to cause damage.

■■ Appellant contends in the alternative that the puni-

tive award was excessive, given under the influence of passion and prejudice. The issue of whether the punitive award was motivated by passion or prejudice was submitted to the trial court by appellant in a motion for new trial under Rule 59 of the Arkansas Rules of Civil Procedure. The trial court denied the motion. Considerable discretion is given to the jury in fixing punitive damages in an amount it deems appropriate to the circumstances. *First National Bank of Brinkley* v. *Frey*, 282 Ark. 339, 343, 668 S.W.2d 533, 536 (1984). While the award of punitive damages is substantial, it is not so great as to indicate the jury was influenced by passion or prejudice. The amount of the punitive award is supported by substantial evidence, including the relationship between the parties and the extent and duration of the appellant's exercise of dominion over the personalty, and we do not find it excessive under the facts presented, reviewing the evidence in the light most favorable to the verdict. *Schaeffer* v. *McGhee*, 286 Ark. 113, 689 S.W.2d 537 (1985); *Schuster's, Inc.* v. *Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987).

Affirmed.

Special Justice SAM ED GIBSON joins in this opinion.

GLAZE, J., concurs.

Special Justice ROBERT L. JONES, JR., dissents.

PURTLE, HAYS, and NEWBERN, JJ., not participating.

TOM GLAZE, Justice, concurring. The dissent by Special Justice Robert L. Jones is well-reasoned and appears to agree with the majority's assessment as to the law on when punitive damages can be imposed for conversion. Justice Jones seems to part with the court based on the idea that the appellee, Richard Keck, had failed to meet his burden of proof to show the appellant intentionally pursued a course of conduct for the purpose of causing Keck damage. In support of his position, Justice Jones relates his review of the evidence as follows:

> The conduct in question was the retention of possession of appellee's automobile by the appellant. The undisputed evidence is that the appellant retained possession of the appellee's automobile for the purpose of collecting rental which it claimed to be due from appellee for a substitute

automobile. There was no evidence presented that the appellant knew that it had no right to retain possession of appellee's automobile for that purpose. There was no evidence of any motive for the appellant to want to cause damage to the appellee. Its only motive was to collect the rental charge it believed to be due, and it may have believed it had a legal right to retain possession of appellee's automobile until it was paid.

If the evidence mentioned by Justice Jones had been undisputed, I would join in his dissent. However, as I read the record, Keck testified that he told an employee of the appellant that he "wanted it understood that he was not paying for the ['loaner'] car" and that the employee said, "You won't have to because it is covered under your Yugo warranty." Keck said that he never agreed to lease a car from appellant but did sign a blank lease form for the sole purpose of declining insurance on the "loaner" car since he already had insurance that would cover it.

It appears clear to me that a major conflict existed in the testimonies given by the opposing parties. Of course, if the jury believed Keck's story, it could have concluded that he had never agreed to rent a car from the appellant. Further, the jury could have reasonably inferred or found that after Keck signed a blank lease form to waive liability insurance on the "loaner," an employee for the appellant improperly completed the lease agreement thereby obligating Keck for rental payments he never agreed to pay.

In my view, Keck's testimony, by itself, presents a submissible fact question on the issue of punitive damages. It is not this court's duty, on review, to weigh issues of credibility or disregard admissible evidence. Instead, this court's obligation is to determine whether the jury verdict is supported by substantial evidence. In light of the evidence noted above, I agree with the majority in affirming the jury's verdict for punitive damages in this cause.

ROBERT L. JONES, JR., Special Justice, dissenting. This is an action for conversion of personal property. The appellee left his automobile with appellant for repairs while he was out of the state for approximately six weeks. A rental agreement was introduced in evidence which appellee testified that he signed in blank with

the understanding that the form was necessary only for the purpose of waiving liability insurance on the substitute automobile. When the appellee returned the substitute automobile to get possession of his automobile, he was told that he could not have his automobile until he paid the rental due on the substitute automobile. He denied that any rental was due. Appellee filed suit for conversion and appellant counterclaimed for the rental alleged to be due. The jury resolved the issue in favor of the appellee and awarded him $6,337.33 compensatory damages and $25,000.00 punitive damages. I would affirm as to the compensatory damages and reverse as to the punitive damages.

Ark. Code Ann. § 18-45-201 (1987) provides for a possessory lien by automobile repairmen for parts and labor for the repair of an automobile. The repairs effected on appellee's automobile were covered under a manufacturer's warranty; therefore, there was no amount due for the repairs which would give rise to a possessory lien. There is no possessory lien provided under Arkansas law for unpaid rental on a substitute automobile; therefore, appellant had no right to retain possession of appellee's automobile and became liable for conversion. The award of the fair market value of the property at the time of the conversion is the proper measure of compensatory damages.

The instruction given by the trial court on punitive damages was as follows:

> "In addition to compensatory damages for any actual loss that Richard Randall Keck may have sustained, he asks for punitive damages from Walt Bennett Ford, Inc. Punitive damages may be imposed to punish a wrongdoer and to deter others from similar conduct. *In order to recover punitive damages from Walt Bennett Ford, Richard Randall Keck has the burden of proving that Walt Bennett Ford intentionally pursued a course of conduct for the purpose of causing damage.* You are not required to assess punitive damages against Walt Bennett Ford, Inc. but you may do so if justified by the evidence." (Emphasis added.)

AMI 2217 provides two alternative standards of conduct which may justify an award of punitive damages. The first standard is that the defendant knew or ought to have known in the light of the surrounding circumstances that his conduct would

naturally and probably result in damage and that he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred. *The second standard is that the defendant intentionally pursued a course of conduct for the purpose of causing damage.* The conduct in question was the retention of possession of appellee's automobile by the appellant. The undisputed evidence is that the appellant retained possession of the appellee's automobile for the purpose of collecting rental which it claimed to be due from appellee for a substitute automobile. There was no evidence presented that the appellant knew that it had no right to retain possession of appellee's automobile for that purpose. There was no evidence of any motive for the appellant to want to cause damage to the appellee. Its only motive was to collect the rental charge it believed to be due, and it may have believed it had a legal right to retain possession of appellee's automobile until it was paid.

The effect of the holding of the majority is that a person who withholds possession of another's property without legal right to do so, even though he may honestly and in good faith believe that he has a legal right to do so, may nevertheless be punished by an award against him for punitive damages. This is contrary to the holding of this Court in the case of *Satterfield* v. *Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W.2d 192 (1972). In order for punitive damages to be proper, the person against whom they are awarded must be guilty of malice or act in such a willful, wanton or reckless disregard of consequences from which malice may be inferred. (*Satterfield, supra*, at page 185) In this case, the jury was instructed that Keck had the burden of proving that Walt Bennett Ford withheld possession of Keck's automobile "for the purpose of causing damage" (with malice). In my opinion, the evidence was insufficient to justify the submission of that issue to the jury. The burden of proof is on the plaintiff to prove malice, not on the defendant to prove lack of malice.